IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| ADDISON DUNMORE, | : | Case No. 3:12-cv-23 |
| Plaintiff, | : | District Judge Thomas M. Rose<br>Magistrate Judge Michael J. Newman |
| vs. | : | |
| COMMISSIONER OF<br>SOCIAL SECURITY, | : | |
| | : | |
| Defendant. | | |

**REPORT AND RECOMMENDATION[1] THAT: (1) THE ALJ'S NON-DISABILITY FINDING BE FOUND SUPPORTED BY SUBSTANTIAL EVIDENCE, AND AFFIRMED; AND (2) THE CASE BE CLOSED**

This is a Social Security disability benefits appeal brought pursuant to 42 U.S.C. § 405(g). At issue is whether the Administrative Law Judge ("ALJ") erred in finding Plaintiff Addison Dunmore ("Plaintiff") not "disabled" within the meaning of the Social Security Act and therefore unentitled to Disability Insurance Benefits ("DIB").

This case is before the Court upon Plaintiff's Statement of Errors (doc. 8), the Commissioner's Memorandum in Opposition (doc. 12), Plaintiff's Reply (doc. 13), the administrative record (doc. 6),[2] and the record as a whole.

### I. BACKGROUND

#### A. Procedural History

Plaintiff filed applications for DIB and Supplemental Security Income ("SSI") on April 18, 2008, asserting that he has been under a "disability" since April 11, 2008.[3] PageID 167-73.

---

[1] Attached hereto is NOTICE to the parties regarding objections to this Report and Recommendation.

[2] Hereafter, citations to the electronically-filed administrative record will refer only to the PageID.

Plaintiff claims he is disabled due to high blood pressure, heart problems, breathing problems and difficulties concentrating.  PageID 198, 213, 324.

Following initial administrative denials of his application, Plaintiff received a hearing before ALJ Amelia Lombardo ("ALJ Lombardo") in August 2010.  PageID 66-104.  On January 13, 2011, ALJ Lombardo issued a written decision, concluding that Plaintiff's impairments did not constitute a "disability" within the meaning of the Social Security Act.  PageID 49-59.

Specifically, the ALJ's "Findings," which represent the rationale of her decision, were as follows:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2013;

2. The claimant has not engaged in substantial gainful activity since April 11, 2008, the alleged onset date (20 CFR § 404.1571 *et seq.*);

3. The claimant has the following severe impairments: the residuals of a remote aortic valve replacement; chronic obstructive pulmonary disease ["COPD"]; degenerative joint disease of the cervical spine; syncope of unknown etiology; depression; and anxiety (20 CFR § 404.1520(c));

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR §§ 404.1520(d), 404.1525 and 404.1526);

5. After careful consideration of the entire record, the [ALJ] finds that the claimant has the residual functional capacity ["RFC"] to perform light work as defined in 20 CFR § 404.1567(b).  Giving the claimant the full benefit of doubt with regard to his allegations and subjective complaints, it is found that he is limited to unskilled work that would not require exposure to heights or hazardous machinery.  He is further limited to jobs that would not require exposure to extremes of hot or cold;

6. The claimant is unable to perform any past relevant work (20 CFR § 404.1565);

---

[3]Plaintiff's claim for SSI was disapproved due to ineligibility based upon his income.  PageID 109-18.

> 7. The claimant was born [in] 1959 and was 48 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. The claimant subsequently changed age category to closely approaching advanced age (20 CFR § 404.1563);
>
> 8. The claimant has at least a high school education and is able to communicate in English (20 CFR § 404.1564);
>
> 9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (*See* SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2);
>
> 10. Considering the claimant's age, education, work experience, and [RFC], there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR §§ 404.1569 and 404.1569(a)); [and]
>
> 11. The claimant has not been under a disability, as defined in the Social Security Act, from April 11, 2008, through the date of this decision (20 CFR § 404.1520(g)).

PageID 52-59.

Thereafter, the Appeals Council denied Plaintiff's request for review, making the ALJ's non-disability finding the final administrative decision of the Commissioner. PageID 42-45. *See Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993). Plaintiff then filed this appeal on January 25, 2012. Doc. 2.

### B. Plaintiff's Hearing Testimony

At the administrative hearing, Plaintiff testified that he worked in a factory as a screw-machine operator for twenty years, and was laid off in 2007. PageID 71, 91. He collected unemployment benefits from the time of his layoff through April 2010. PageID 79-80.

When asked what physical impairments caused him to be disabled, Plaintiff testified, "it's not any one physical limitation, but it's a bunch of these that have ganged up on me."

PageID 71.  He stated that his physical limitations are caused by a heart valve replacement, thyroid disease, arthritis, osteoporosis, COPD, and bone spurs on his spine.  PageID 71-74.  Plaintiff also testified that he suffers from carpal tunnel syndrome in his wrists, chronic numbness in his right hand, and occasional numbness in his left hand.  PageID 75.  He also has migraine headaches once every two or three weeks.  PageID 78.

Regarding mental limitations, Plaintiff testified that he suffers from depression, and has suicidal thoughts.  PageID 76-77.  He has received treatment at a community mental health center since 2009.  PageID 77.  He sees a counselor approximately once a month for psychotherapy, and a psychiatrist several times per year for medication management.  *Id*.

Plaintiff estimated that he can lift twenty pounds; walk one block; and stand approximately thirty to forty-five minutes.  PageID 79-80, 87.  He testified that he uses a cane when he walks, but acknowledged the cane was not prescribed by a physician.  PageID 77-78.  Regarding his daily activities, Plaintiff testified that he is independent in self-care. PageID 84.  He lives in a one-story house with his two teenage sons.  PageID 70.  Plaintiff has sole custody of his sons.  PageID 82.  He has a driver's license, and drives when necessary.  PageID 70.  He performs household chores including cooking, washing dishes, laundry, cleaning, and grocery shopping.  PageID 81.  He also socializes with friends and family members, and is able to handle his family's finances.  PageID 81.

Plaintiff testified that he smokes, despite numerous attempts to quit.  PageID 74, 93.  He acknowledged a history of alcohol and drug addiction, but stated that he has been in recovery for many years.  PageID 77.

### C. Vocational Expert Testimony

Brian Womer, a vocational expert ("VE"), also testified at the administrative hearing. PageID 94-100. He described Plaintiff's past work as a machinist, which he classified at the medium, skilled level. PageID 94-95. The VE acknowledged that an individual of Plaintiff's age, education and work experience -- who is limited to work at no more than the light exertional level -- could not perform his previous job. *Id.*

The VE also testified that, based on an RFC of light work with restrictions of no heights or hazardous machinery, and no extremes of heat or cold, Plaintiff could perform 24,000 jobs in the regional economy. PageID 95. With the added limitation of frequent fine manipulation with the right dominant hand, the VE testified that the number of jobs would be reduced to approximately 20,000. *Id.* The VE also testified if all the postural limitations were reduced to "occasional," the number of jobs would be reduced to 7,000. PageID 98. With the additional limitation of a sit/stand option, the number of jobs available would be reduced to 4,000; such jobs would include a small parts assembler and assembly machine tender. PageID 98-99.

## II. APPLICABLE LAW

### A. Substantial Evidence Standard

The Court's inquiry on appeal is to determine: (1) whether the ALJ's non-disability finding is supported by substantial evidence; and (2) whether the ALJ employed the correct legal criteria. 42 U.S.C. § 405(g); *Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742,745-46 (6th Cir. 2007). In performing this review, the Court must consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 361 (6th Cir. 1978).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971). When

substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if substantial evidence also exists in the record upon which the ALJ could have found a claimant disabled. *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001). Thus, the ALJ has a "'zone of choice' within which he [or she] can act without the fear of court interference." *Id.* at 773.

The second judicial inquiry -- reviewing the correctness of the ALJ's legal analysis -- may result in reversal even if the ALJ's decision is supported by substantial evidence in the record. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). "[A] decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen*, 478 F.3d at 746.

### B. "Disability" Defined

To be eligible for DIB, a claimant must be under a "disability" as defined by the Social Security Act. 42 U.S.C. § 423(d)(1)(A). Narrowed to its statutory meaning, a "disability" includes physical and/or mental impairments that are both "medically determinable" and severe enough to prevent a claimant from: (1) performing his or her past job; and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *Id.*

Administrative regulations require a five-step sequential evaluation for disability determinations. 20 C.F.R. § 404.1520(a)(4). Although a dispositive finding at any step ends the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), the complete sequential review poses five questions:

1. Has the claimant engaged in substantial gainful activity?

2. Does the claimant suffer from one or more severe impairments?

3. Do the claimant's severe impairments, alone or in combination, meet or

> equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?

   4. Considering the claimant's RFC, can he or she perform his or her past relevant work?

   5. Assuming the claimant can no longer perform his or her past relevant work -- and also considering the claimant's age, education, past work experience, and RFC -- do significant numbers of other jobs exist in the national economy which the claimant can perform?

20 C.F.R. § 404.1520(a)(4); *Miller v. Comm'r of Soc. Sec.,* 181 F. Supp. 2d 816, 818 (S.D. Ohio 2001). A claimant bears the ultimate burden of establishing that he or she is "disabled" under the Social Security Act's definition. *Key v. Callahan*, 109 F.3d 270, 274 (6th Cir. 1997).

### III. OPINION AND ANALYSIS

As a preliminary note, Plaintiff's pertinent medical records have been adequately summarized in his Statement of Errors and the administrative decision, *see* doc. 8 at PageID 856-61; PageID 52-56, and the Court will not repeat them here. Where applicable, the Court will identify the medical evidence relevant to its decision.

On appeal, Plaintiff argues that the ALJ erred by: (1) failing to properly consider the opinion of his treating mental health therapist, Jack Adkins, MS, PCC, under Social Security Regulation ("SSR") 06-3p; (2) finding at Step Four that Plaintiff has the RFC to perform a limited range of light work; and (3) improperly portraying Plaintiff's physical and mental impairments in the questions asked to the VE. *See* doc. 8 at PageID 862-71.

**A. The ALJ Made No Error in According "Little Weight" to Mr. Adkins' Opinion**

Mr. Adkins began treating Plaintiff on June 24, 2009. PageID 740. On August 11, 2010, Mr. Adkins reported a diagnosis of depressive disorder NOS, and assigned Plaintiff a Global

Assessment of Functioning ("GAF") score of 55.[4]  PageID 740-42.  He also noted Plaintiff's symptoms included poor memory, appetite disturbance, sleep problems, social withdrawal, flat affect, decreased energy, substance dependence, loss of interests, feelings of worthlessness, and problems with thinking and concentration.  *Id*.  Mr. Adkins described Plaintiff's prognosis as "poor," and opined his mental impairment would cause him to miss work more than three times per month.  *Id*.  Mr. Adkins additionally opined Plaintiff has extreme limitations in his activities of daily living and concentration, persistence, and pace, as well as marked limitations in his social functioning and episodes of deterioration/decompensation.  *Id*.

Plaintiff contends the ALJ erred by failing to properly weigh Mr. Adkins' opinion in accordance with Social Security regulations.  However, Plaintiff's argument lacks merit.

Under the regulations, as a therapist, Mr. Adkins is not an "acceptable medical source" as defined by 20 C.F.R. § 404.1513(a)(1)-(5). While SSR 06-03p, 2006 SSR LEXIS 5, recognizes that "non-medical sources" who have had contact with a claimant in their professional capacity are valuable sources of evidence for assessing impairment severity and functioning, the regulation also allows the ALJ to give greater weight to "acceptable medical sources" who are recognized as more-qualified healthcare professionals. *Id*.

Moreover, under SSR 06-03p, 2006 SSR LEXIS 5, the opinions of "non-medical sources," like those of "acceptable medical sources" must be weighed and evaluated with the criteria set forth in 20 CFR § 404.1527, as further amplified in Social Security Rulings 96-2p,

---

[4]"GAF," Global Assessment Functioning, is a tool used by health-care professionals to assess a person's psychological, social, and occupational functioning on a hypothetical continuum of mental illness. It is, in general, a snapshot of a person's "overall psychological functioning" at or near the time of the evaluation. *See Martin v. Comm'r*, 61 F.App'x 191, 194 n.2 (6th Cir. 2003); *see also* Diagnostic and Statistical Manual of Mental Disorders, 4th ed., Text Revision ("DSM-IV-TR") at 32-34.  A GAF of 51-60 indicates "moderate symptoms OR any moderate difficulty in social, occupational, or school functioning." *Id*. (capitalization in original); *accord Penny v. UPS*, 128 F.3d 408, 415 (6th Cir. 1997)

1996 SSR LEXIS 9 and 96-5p, 1996 SSR LEXIS 2. The factors the ALJ must consider include the consistency of the opinion with the other evidence of record, and the degree to which the source presents relevant evidence to support that opinion. *See* 20 CFR § 404.1527.

The ALJ's decision confirms her consideration of the aforementioned regulations when weighing Mr. Adkins' opinion, and reveals the depth of her analysis:

> Mr. Adkins, the claimant's therapist, reported that the claimant would be disabled from all work activity due to his mental impairments. Under the provisions of 20 CFR [§] 1513(a), licensed counselors are not acceptable medical sources. As such, there is no treating source issue. However, under the provisions of [SSR] 06-03p, the opinions of non-acceptable, as well as acceptable medical sources must be weighed and evaluated in accordance with the criteria set forth in 20 CFR [§] 404.1527, as further amplified in [SSR] 96-2p and 96-5p. The factors to consider in this process include: the length of the relationship with the claimant, how consistent the opinion is with other evidence, the degree to which the source presents relevant evidence to support an opinion, how well the source explains the opinion, whether the source has a specialty or area of expertise related to the individual's opinion, and any other factors that tend to support or refute the opinion.
>
> The opinion of Mr. Adkins has been weighed and considered in accordance with the criteria set forth in 20 CFR 404.1527 and 416.927 and [SSR] 96-2p, 96-5p, and 06-03p. It is found that the opinion is not entitled to any special weight under the facts and circumstances of this particular case, and such opinion is rejected as providing a basis for any residual functional capacity that is different from the one set forth above. The opinion that [Plaintiff]'s psychological symptoms were of Listing level severity is inconsistent with the treatment records, as well as with Mr. Adkins' own report of a [GAF] score of 55, which is indicative of only moderate symptoms, moderate impairment in functioning, or both. As his opinion is both internally inconsistent and inconsistent with the overall evidence of record, it is afforded little weight.

PageID 55-56.

The Court finds the weight accorded to Mr. Adkins' opinion to be supported by substantial evidence, and the ALJ's consideration of his opinion to be compliant with Social Security regulations. As noted by the ALJ, Mr. Adkins' opinion -- that Plaintiff is unable to

---

("moderate difficulty" does not rise to the level of disability).

maintain employment at any level, *see* PageID 740-42 -- is inconsistent with the other medical opinions of record. Consultative examiner George Schulz, Ph.D., opined that Plaintiff was impaired in only one functional domain, and only to a mild degree. PageID 298-304. Similarly, medical consultants Leslie Rudy, Ph.D., and Doug Pawlarczyk, Ph.D., opined Plaintiff has no extreme or marked limitations. PageID 308-26, 335. Rather, Drs. Rudy and Pawlarczyk share the opinion that Plaintiff has moderate limitations in the domain of attention/concentration based on testing indicating memory difficulties, and can nevertheless perform simple and multi-step tasks. *Id.*

Notably, Darnell Ladson, D.O., the psychiatrist who was treating Plaintiff at the same time as Mr. Adkins, did not share the opinion that Plaintiff's mental impairments were disabling. On initial evaluation in June 2009, Dr. Ladson found Plaintiff's concentration/memory to be "ok"; noted no panic attacks, mood swings, delusions, or anxiety; and assigned a GAF score of 55 -- indicative of only moderate symptoms. *See* PageID 833-36; DSM-IV-TR at 32-34. *See also Sims v. Comm'r of Soc. Sec.*, 406 F.App'x 977, 980 (6th Cir. 2011) (noting that "moderate" functional limitations are "non-disabling"). On subsequent visits, Dr. Ladson continued to find normal behavior ("ok" or "controlled"), normal cognition ("ok" or "average"), normal thought content ("ok" or "hopeful"), and normal perception ("ok"). PageID 801, 803, 807, 813, 817, 825. He also often found Plaintiff to have a normal, non-depressed ("euthymic") mood/affect. PageID 801, 803, 813, 817, 825.

Furthermore, Mr. Adkins' opinion is inconsistent with Plaintiff's reported daily activities. For instance, Mr. Adkins reported that Plaintiff has extreme limitations in his activities of daily living, but such an opinion is undermined by Plaintiff's testimony that he lives with and cares for his two teenage sons; performs household chores such as washing dishes, doing laundry, and

-10-

house cleaning; manages his own finances; and drives when necessary.  *See*, *e.g.*, PageID 70, 81, 301.  Mr. Adkins' opinion -- that Plaintiff has marked limitations in maintaining social functioning -- is similarly undermined by Plaintiff's own admission that he socializes with friends at least once per week, and attends Alcoholics Anonymous and Narcotics Anonymous meetings three times per week.  *See*, *e.g.*, PageID 301.  Moreover, Mr. Adkins' assignment of a GAF score of 55, while consistent with the score assigned by Dr. Ladson, is generally indicative of only moderate symptoms, and not of the severity which would render a person disabled from all work activity.  DSM-IV-TR at 32-34.

Based upon the foregoing, the ALJ made no error in weighing Mr. Adkins' opinion, or in finding it to be unsupported by the record.  *See Adkins v. Kentland Elkhorn Coal Corp*., No. 95-3122, 1996 U.S. App. LEXIS 17293, at *12-13 (6th Cir. Jun. 3, 1996) ("[t]he ALJ should reject as insufficiently reasoned any medical opinion that reaches a conclusion contrary to objective clinical evidence without explanation").  Given the contrary evidence of record, the ALJ acted well within the permissible "zone of choice" in weighing Mr. Adkins' opinion.  *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994).

### B.  Substantial Evidence Supports the ALJ's Finding as to Plaintiff's RFC, and the VE's Testimony Based Upon Such Finding

Plaintiff argues the ALJ "gave no articulated reasons for crediting or rejecting what particular evidence that she used in reaching her conclusion that Plaintiff could perform a reduced range of light work activity."  *See* doc. 8, at PageID 868.  Plaintiff additionally argues the ALJ erred in the questions she asked to the VE based upon her RFC finding.  Both of these arguments lack merit.

A claimant's RFC is an assessment of physical and mental work abilities -- *i.e.*, what the individual can or cannot do despite his or her limitations.  20 C.F.R. § 404.1545(a); *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002).  Social Security regulations charge the ALJ with the responsibility for assessing a claimant's RFC.  *See* 20 C.F.R. §404.1527(e)(2).

Here, the ALJ's RFC determination is based upon the medial opinion evidence of record, the results of objective clinical testing, Plaintiff's treatment history, and his daily activities. Notably, none of Plaintiff's treating physicians opined he is completely disabled.  In absence of any such treating physician opinion, the ALJ was justified in relying on the opinions of the record-reviewing medical consultants, Leslie Green, M.D., and Myung Cho, M.D.  *See* PageID 327-35, 337; *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).  *See also Peebles v. Chater*, No. 95-5627, 1996 U.S. App. LEXIS 42593, at *15 (6th Cir. May 6, 1996) ("in the absence of any evidence from treating physicians…the ALJ was required to rely on the reports of the consulting physician").

Furthermore, the ALJ made no error in determining that the assessments of Drs. Green and Cho were entitled to considerable deference, as they were consistent with the medical findings of record, and were not rebutted by other substantial evidence.  PageID 53, 55.  In this regard, the ALJ explained:

> There is no evidence of adverse side effects from treatment or medications that would prevent the claimant from working at the light level of exertion.  No treating or examining medical source reported that the claimant was disabled from all work activity.  To the contrary, in June 2010, his physician at the Corwin Nixon Health Center declined to complete a form for a handicapped placard for [Plaintiff].

PageID 56-57, 728.  The ALJ also observed that Plaintiff has had no required surgical intervention for his physical impairments; all of his treatment has been conservative; and there is

nothing in the record to support the use of an ambulatory aid, including Plaintiff's testimony that the cane he uses had not been prescribed by a physician. PageID 77-78. The ALJ's RFC finding appropriately takes into account the effects of his physical and mental impairments, and is supported by substantial evidence.

Although Plaintiff dismisses the state agency reviewer's opinions as outdated because additional records were submitted after their review, *see* doc. 8 at PageID 869, the record illustrates that the ALJ appropriately considered all of the medical evidence of record. *See* PageID 52, 54. It is the Commissioner's function to resolve conflicts in the medical evidence, *see Hardaway v. Sec'y of Health & Human Servs.*, 823 F.2d 922, 928 (6th Cir. 1987), and that is exactly what the ALJ reasonably did here.

The record strongly suggests that Plaintiff can perform a wide range of activities and is not disabled. *See supra*. This conclusion is supported by the medical evidence, discussed above, which shows that Plaintiff's impairments, whether viewed singly or in combination, do not demonstrate disability. *Id*. Moreover, it is not the Court's role to sift through the facts and make a *de novo* determination of whether a claimant is disabled. The ALJ, not the Court, is the finder of fact. *Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987). The ALJ reasonably undertook that role here. *Id*. So long as the Commissioner's decision is supported by substantial evidence, it must be affirmed. 42 U.S.C. §405(g); *Richardson*, 402 U.S. at 401. Where, as here, there is substantial evidence supporting the ALJ's resolution of the disputed facts, the Court must affirm the ALJ even if the Court might have resolved those disputed facts in Plaintiff's favor had it been the trier of fact. *Nunn v. Bowen*, 828 F.2d 1140, 1144 (6th Cir. 1987).

In addition, the Court finds the ALJ committed no error at Step Five. Plaintiff's argument -- that the hypothetical posed to the vocational expert did not include all of his limitations -- lacks merit. An ALJ may properly pose to the VE a hypothetical reflective of the ALJ's actual findings, to the extent that those findings are supported by substantial evidence. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475-76 (6th Cir. 2003). The fact that the jobs identified by the VE may also have some multi-step tasks does not necessarily imply a requirement in excess of Plaintiff's ability. The VE was competent to testify that there were a number of positions which Plaintiff could perform based upon the RFC provided by the ALJ. Whereas the Court concluded *supra* that the ALJ's RFC determination is supported by substantial evidence, the hypothetical questions posed by the ALJ, which incorporated such assessment, were not improper. *See Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).

## IV. RECOMMENDATION

For the foregoing reasons, the Court finds Plaintiff's assignments of error to be unavailing. The ALJ's decision is supported by substantial evidence and should be affirmed.

**IT IS THEREFORE RECOMMENDED THAT:**

1. The Commissioner's final non-disability finding be found supported by substantial evidence, and **AFFIRMED;** and

2. This case be **CLOSED**.

January 30, 2013                                                                 s/Michael J. Newman
                                                                                  United States Magistrate Judge

## **NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to **SEVENTEEN** days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(B)(C), or (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F. 2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).